OPINION OF THE COURT
John R. LaCava, J.
In this CPLR article 78 matter, challenging, inter alia, assessments for tax year 2008 for the subject premises, respondents seek an order dismissing the petitions for failure of petitioner to timely commence the instant action. Petitioner is the owner of a multiparcel residential development, designated on the village tax map as section 341, block 1, lots l.-l to and including 1.-189, and consisting of 189 condominium units in 20 buildings of between 6 and 14 units each, and their surrounding lots. Lots l.-l to and including 1.-42 are not at issue in the instant matter, having been completed in March 2008. The remaining parcels, lots 1.-43 to and including 1.-189, were, in the spring of 2008, in various states of construction or planning.
Prior to the taxable status date in 2008, respondent assessor inspected the aforementioned parcels and determined that some of them were in a completed condition and therefore should be taxed; on those parcels she determined appropriate assessments and added them to the tax roll. Those which were not completed, according to her stated custom and practice of not assessing incomplete improvements, were not given assessments. The assessment changes were, respondent asserts, published by mailing undated letters to petitioner of the changes in May of 2008; petitioner alleges, however, that he received none of these 189 notices, and thus failed to challenge the rolls before the date they were finalized (i.e., on or about July 1, 2008).
Petitioner further alleges that his first notice of the changed assessments was when the school tax bills were delivered to him in mid-September of 2008. At that time, he consulted with the assessor, who, he alleges, conceded that she had not mailed tax change notices; that some of the parcels were not completely improved; that her policy was that, unless properties were improved with completed structures, she would not assess those improvements; and that, therefore, the assessments for incomplete properties constituted assessments with clerical errors, for which errors petitioner could seek relief from the County Real Property Tax Service Agency (Agency). Petitioner *1126 applied to the Agency for such relief, together with a memo from the assessor that she had erred in putting assessments on the incomplete properties; after being informed by the Director of the Agency that the assessment errors alleged by petitioner were not the type of error for which the Agency could provide relief, petitioner commenced the instant article 78 action to challenge the legality of the assessments and that denial. Subsequently, petitioner reapplied to the Agency for the same relief; this latter application was denied for similar reasons in early 2009.
The Petition for Relief from Clerical Errors As set forth above, the assessor recommended that petitioner seek relief from the Agency for her errors,[1] the application plead - ing specifically that the assessed value recorded on the property record card differed from that entered on the tax roll and thus constituted a “clerical error.” The application, dated September 24, 2008, was accompanied by the tax bills, and the memo from the assessor conceding that the improvements were incomplete and that the assessed value in each case should only be $2,000 for the land value of each parcel. The application is noted as having been received on that same date, and, on October 16, 2008, the Director of the Agency, John I. McCarey, denied the application. A letter by Mr. McCarey, dated the following day, included reference to the memo, which the assessor, according to the letter, asserted should not have been given to petitioner “based on further inspection of the property.” It also asserted her right to assess the buildings, since they existed in some capacity on the tax date. While recognizing that petitioner alleges a lack of notice of the changed assessments, such notice, he stated, was not necessary for the levy, collection, or enforcement of the tax payments under RPTL 510. Finally, he stated that petitioner’s claim was assessment based, and not related to clerical errors, errors in essential facts, or unlawful entries, as provided for in RPTL 550.
RPTL 556 provides:
“§ 556. Refunds and credits of taxes “1. (a) Pursuant to the provisions of this section, an appropriate tax levying body may refund to any person the amount of any tax paid by him or her, or portion thereof, as the case may be, or may provide
*1127 a credit against an outstanding tax (i) where such tax was attributable to a clerical error or an unlawful entry and appheation for refund or credit is made within three years from the annexation of the warrant for such tax, or (ii) where such tax was attributable to an error in essential fact, other than an error in essential fact as defined in paragraph (d) of subdivision three of section five hundred fifty of this title, and such application for refund or credit is made within three years from the annexation of the warrant for such tax . . .
“2. (a) Whenever it appears to a person who has paid a tax that such tax, or a portion thereof, was attributable to an unlawful entry, a clerical error, or an error in essential fact, as described in subdivision one of this section, such person may file an application in duplicate, including any available proof of the error, with the appropriate county director of real property tax services for a refund of such tax, or portion thereof, as the case may be . . .
“(c) For an error in essential fact, the application for correction shall include a copy of the property record card, field book, or other final work product upon which the incorrect assessment was based and a copy of any existing municipal record which substantiates the occurrence of the error. For an unlawful entry as defined in paragraph (a) of subdivision seven of section five hundred fifty of this title, the application for correction shall include a statement by the assessor or by a majority of a board of assessors substantiating that the assessor or assessors have obtained proof that the parcel which is the subject of the application should have been granted tax exempt status; the failure to include such statement shall render the application null and void and shall bar the tax levying body from directing a refund or credit of taxes pursuant to this section.
“3. The application for a refund or credit pursuant to this section shall be on a form and shall contain such information as prescribed by the state board and shall be available in the offices of all collecting officers and in the office of the county director.
“4. (a) The county director, within ten days of the receipt of an application filed pursuant to this sec-
*1128 tion, shall investigate the circumstances of the claimed unlawful entry, clerical error or error in essential fact to determine whether the error exists, and on such investigation he may require and shall receive from any officer, employee, department, board, bureau, office or other instrumentality of the appropriate municipal corporation such facilities, assistance and data as will enable him to properly consummate his studies and investigations hereunder.
“(b) Upon completion of such investigation the county director shall immediately transmit a written report of such investigation and his or her recommendation for action thereon, together with both copies of the application, to the tax levying body. If the same alleged error also appears on a current assessment roll, the county director shall also file a copy of such report and recommendation with appropriate assessor and board of assessment review who shall consider the same to be the equivalent of a petition for correction filed with such board pursuant to section five hundred fifty-three of this title. “5. The tax levying body, at a regular or special meeting, upon the presentation of an application filed pursuant to this section and the written report described in subdivision four of this section, shall: “(a) examine the application and report to determine whether the claimed unlawful entry, clerical error or error in essential fact exists;
“(b) reject an application where it is determined that the claimed unlawful entry, clerical error or error in essential fact does not exist by making a notation on the application and the duplicate copy thereof that the application is rejected and the reasons for the rejection;
“(c) approve an application where it is determined that the claimed unlawful entry, clerical error or error in essential fact does exist by making a notation on the application and the duplicate copy thereof that the application is approved and by entering thereon the amount of the refund to be paid or outstanding tax to be credited;
“(d) mail an application that has been rejected to the applicant;
“(e) mail an application that has been approved to
*1129 the applicant . . .
“8. (a) A tax levying body may, by resolution, delegate to an official who is empowered to authorize payment of bills without prior audit by such body or, in the event there is no official so empowered, to an official responsible for the payment of bills upon audit of the appropriate municipal corporation so designated by it, the authority to perform the duties of such tax levying body, as provided in this section.
Such resolution shall only be in effect during the calendar year in which it is adopted and shall designate that such delegation of authority is applicable only where the recommended refund or credit is twenty-five hundred dollars or less, or such other sum not to exceed twenty-five hundred dollars.
“(b) Where such resolution is adopted and the recommended refund or credit does not exceed the amount specified in the designating resolution, the county director shall transmit the written report of the investigation and recommendation, together with both copies of the application, to the official designated by the tax levying body. Upon receipt of the written report, the designated official shall follow the procedure which the tax levying body would follow in making refunds, provided, however, where the designated official denies the refund or credit, in whole or in part, such official shall transmit to the tax levying body for its review and disposition pursuant to subdivision five of this section the written report of the investigation and recommendation of the county director, together with both copies of the application and the reasons that the designated official denied the refund or credit. Where the recommendation of the county director is to deny the application or the refund or credit requested is in an amount in excess of the amount authorized in the enabling resolution, the county director shall transmit the written report of the investigation and recommendation, together with both copies of the application, to the tax levying body.”
Furthermore, RPTL 550, which provides definitions for some of the terms in section 556, provides:
“§ 550. Definitions “When used in this title: . . .
“3. ‘Error in essential fact’ means:
*1130 “(a) an incorrect entry on the taxable portion of the assessment roll, or the tax roll, or both, of the assessed valuation of an improvement to real property which was destroyed or removed prior to taxable status date for such assessment roll; or “(b) an incorrect entry on the taxable portion of the assessment roll, or the tax roll, or both, of the assessed valuation of an improvement to real property which was not in existence or which was present on a different parcel; or
“(c) an incorrect entry of acreage on the taxable portion of the assessment roll, or the tax roll, or both, which acreage was considered by the assessor in the valuation of the parcel and which resulted in an incorrect assessed valuation, where such acreage is shown to be incorrect on a survey submitted by the applicant; or
“(d) the omission of the value of an improvement present on real property prior to taxable status date; or
“(e) an incorrect entry of a partial exemption on an assessment roll for a parcel which is not eligible for such partial exemption; or
“(f) an entry pursuant to article nineteen of this chapter on an assessment or tax roll which is incorrect by reason of a misclassification of property which is exclusively used for either residential or non-residential purposes.
“4. ‘Improvement’ means real property as defined in paragraph (b) of subdivision twelve of section one hundred two of this chapter, and which has been separately described and valued on the property record card, field book or other final work product of the assessor.”
While the application for review by the Agency was prepared by the assessor with knowledge that petitioner asserted clerical errors with respect to the assessments, and such allegation appears on the face of the document, the application form she assisted him to complete is one under section 556-b, and is entitled “Multi-Parcel Errors.” The application thus appears to seek, on its face, review under both RPTL 556-b (although section 556-b [1] by its terms does not apply to the type of error petitioner alleged) and also under RPTL 556, which, at least arguably (i.e., that the improvement alleged by the assessor did not exist in its *1131 complete form on the tax status date), does. Indeed, part of the determination by the Agency, as disclosed in the rejection letter, included a finding that the error alleged was not “clerical,” or one of “essential facts.” However, it is entirely unclear from the letter how the agency reached its determination under either RPTL 556 or 556-b.
More troubling, however, is the manner in which the Agency reached its determination at all. As set forth above, section 556 (4) (a) requires that “[t]he county director, within ten days of the receipt of an application filed pursuant to this section, shall investigate the circumstances of the claimed unlawful entry, clerical error or error in essential fact to determine whether the error exists . . . .” Notably, section 556-b (3) (a) likewise requires the investigation to be conducted within 10 days; whether conducted under either or both statutes, however, the investigation was not completed until the 22nd day after receipt of the application, or far in excess of the time period provided.
Further, the court notes that section 556-b is not at all clear on the procedure following the investigation of the application by the Agency, except that the report of the inquiry is to be referred to the “tax-levying body” for a determination on the report. RPTL 556 on the other hand, is much more explicit— the agency’s report is to be conveyed to the tax-levying body (RPTL 556 [4] [b]), and a determination on the application by the tax-levying body is directed to take place “at a regular or special meeting” of that body (RPTL 556 [5]). It is thus clear that the determination on the application for a refund is not the report generated by the investigation conducted by the Agency on the application; rather, that report is referred to the tax-levying body for its determination on the application.
The New York State Office of Real Property Services (ORPS) dealt with this very issue in 11 Opinions of Counsel SBRPS No. 122 (Apr. 7, 2008). ORPS had been asked to give its opinion on the need, or advisability, of municipal governing board resolutions with respect to judicial or administrative tax assessment reviews, including for the administrative correction of errors. Regarding the latter, ORPS is of the opinion that an investigation conducted into alleged assessment errors by a county director of real property tax services under RPTL 556 and 556-b, is embodied in a report which constitutes his recommendation for the resolution of the disputed assessment. That report, that recommendation, is provided then to the tax-levying body for a decision on the refund petition. While, ORPS agrees, the statute *1132 does not specify how that decision is made by the body, it is its opinion that, in those counties where the county legislative body is the tax-levying body, that the decision on such applications should be by resolution adopted by the legislative body.[2]
That the ORPS opinion is correct, that this is the proper procedure for determining a petitioner’s application for a refund under RPTL 556 and 556-b, is implicit in Battlefields Inc. v County Legislature of County of Rockland (86 Misc 2d 181 [Sup Ct, Rockland County 1976], affd 56 AD2d 586 [2d Dept 1977]). In Battlefields, petitioner challenged a determination by the Rockland County Legislature on his petition pursuant to RPTL 556 for a refund of taxes, based on an “error in essential fact.” The court upheld the referral of the application to the Legislature, but held that its determination, embodied in a resolution denying the application, was in error as arbitrary and capricious, for its apparent failure to consider whether there was an error in essential fact in the assessment rolls, and the matter was remanded to the Legislature for a proper determination on the refund application. (See also Community Health Plan v Burckard, 3 AD3d 724 [3d Dept 2004] [where the Sullivan County Agency’s role under RPTL 556 is described as providing a recommendation on the disposition of the application, rather than a determination on it].)
Here, where Orange County is the tax-levying body for the Town of Monroe, there is no record that this application, and the Agency’s report thereon, was ever referred to the Orange County Legislature for a determination on the application pursuant to RPTL 556 (4) (b). Neither is there any record that the Orange County Legislature considered the application pursuant to RPTL 556 (5) (a); or that it embodied that determination in a resolution, which was then sent to petitioner, pursuant to RPTL 556 (5) (b)-(e). Instead, the Agency simply made a determination on the petitioner’s application, and communicated that determination to him.
The instant petition seeks, inter alia, a determination that the Agency review and approve petitioner’s refund application. As set forth above, clearly pursuant to either RPTL 556 or 556-b, the determination denying the application herein should *1133 not have been made here by the Agency; rather, while it is the Agency’s duty to review said application and produce a report thereon, it is the duty of the Orange County Legislature alone to review the report and determine the application. Consequently, on the court’s own motion, this matter will be
“remanded to the Legislature which is directed to consider the merit, if any, of petitioner’s application for refund of the alleged overpayments made . . . pursuant to sections 556 ... of the Real Property Tax Law . . . This matter shall be scheduled for the next agenda of the Legislature following the entry of the judgment to be made herein.” (Battlefields at 188.)
All other motions will be denied, with leave to renew upon any determination by the Orange County Legislature of the petitioner’s application.
It is hereby ordered, that the motions by respondents to dismiss are denied, with leave to renew upon a future determination by the Orange County Legislature of the aforementioned petitioner’s refund application pursuant to RPTL 556; and it is further ordered, that the matter, solely insofar as it relates to a challenge by petitioner to a denial by the Orange County Real Property Tax Service Agency, of petitioner’s aforementioned application for a refund of taxes pursuant to RPTL 556, is remanded to the Orange County Legislature for consideration, on the merits, of petitioner’s aforesaid application, which consideration shall take place at the next regularly scheduled agenda of the Legislature following the entry of the judgment to be entered herein, and the matter is in all other respects held in abeyance pending that review and determination by the Legislature.

. Indeed, it is the Agency’s position that the assessor prepared the appeal form for petitioner.

. ORPS also recognized that RPTL 556 (8) provides for the decision-making power being lodged, by “resolution,” in a county agency, but only relating to refunds of under $2,500, and that this section was added to obviate the need for regular resolutions by the legislative body relating to small refunds.